```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF GEORGIA
                      COLUMBUS DIVISION
```

DENNIS RILEY,                         *

    Plaintiff,                    *

vs.                                   *      CASE NO. 4:08-CV-62 (CDL)

THE HARRIS COUNTY SHERIFF'S           *
DEPARTMENT and RYAN WILLIAMSON,
                                      *
    Defendants.
                                      *

O R D E R

Defendant Ryan Williamson, a Harris County Sheriff's Deputy, detained Plaintiff because he believed there was an outstanding warrant for Plaintiff's arrest. When Plaintiff tried to flee, Williamson shocked Plaintiff with a taser gun. Plaintiff filed this action alleging that Williamson used excessive force and had no probable cause to detain or arrest him. Therefore, Plaintiff maintains that Williamson violated his constitutional rights under the Fourth Amendment. Plaintiff also asserts state law tort claims under Georgia law.

Presently pending before the Court is Williamson's Motion for Summary Judgment (Doc. 32). For the reasons set forth below, the Court finds that Williamson is entitled to qualified immunity as to Plaintiff's federal claims and official immunity as to Plaintiff's Georgia law claims. Accordingly, Williamson's motion is granted.[1]

---

[1] Since the only claims presently asserted in this action are against Williamson in his individual capacity, summary judgment in his favor disposes of the entire action.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party moving for summary judgment has the burden to show that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the summary judgment movant meets its burden, the burden shifts and the nonmoving party must produce evidence to show that there *is* a genuine issue of material fact. *Id.* at 324. The nonmoving party must "go beyond the pleadings," *id.,* and point the Court to "specific facts showing a genuine issue for trial," Fed. R. Civ. P. 56(e)(2); *accord Celotex Corp.*, 477 U.S. at 324.

The movant is entitled to summary judgment if, after construing the evidence in the light most favorable to the nonmoving party and drawing all justifiable inferences in favor of the nonmoving party, no genuine issues of material fact remain to be tried. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). It is not enough to have *some* alleged factual dispute; there must be a genuine issue of material fact to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48. A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable

jury to return a verdict for the nonmoving party—there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Anderson*, 477 U.S. at 248.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed for purposes of the pending summary judgment motion. During the time relevant to this action, Defendant Ryan Williamson ("Williamson") was a deputy sheriff employed by the Harris County Sheriff. On May 21, 2006, Williamson was driving his marked patrol car on Warm Springs Road in Harris County when he saw Plaintiff in the parking lot of a convenience store. (Pl.'s Dep. 66:8-13, May 18, 2009.) Williamson stopped his car and parked on the side of the road near the convenience store. (*Id.*) Plaintiff went into the store and spent around fifteen minutes inside, and when he left the store Williamson's car was still outside. (*See id.* at 66:20-22, 71:5-6, 72:3-5.) When Plaintiff came near Williamson's car, Williamson told Plaintiff: "Dennis Riley, freeze. You got a warrant on you." (*Id.* at 66:22-23.) Williamson then got out of his car, holding a taser gun ("taser") in his hand.[2] (*Id.* at 66:23-24.)

---

[2] The parties do not specify what kind of taser Williamson had. In general, a taser is a weapon "that uses propelled wire to conduct energy to a remote target, thereby controlling and overriding the body's central nervous system." *Draper v. Reynolds*, 369 F.3d 1270, 1273 n.3 (11th Cir. 2004).

3

Williamson told Plaintiff that he had an outstanding arrest warrant due to unpaid child support. (Pl.'s Dep. 73:9-11, 73:16-19.) Plaintiff concedes that within a month before the incident at issue in this action, there was an outstanding warrant for his arrest. (*Id.* at 122:3-7.) He contends, however, that he paid the back child support and that the warrant was cancelled. (*Id.* at 123:3-8.) Plaintiff told Williamson that he had taken care of the warrant, and he and Williamson argued. (*Id.* at 74:2-6). According to Plaintiff, the discussion escalated. (*Id.* at 74:8-9.) Plaintiff told Williamson that the deputy was "mess[ing] with [him]" and "harassing [him]." (*Id.* at 74:13, 96:13-23.) Williamson told Plaintiff that he needed to investigate whether the warrant for Plaintiff's arrest was still valid and asked for Plaintiff's social security number and date of birth so that he could complete the investigation. (*Id.* at 75:3-23.) Plaintiff told Williamson that he had plenty of time while Plaintiff was in the convenience store to check on the warrant (*id.* at 96:13-23), but he did ultimately provide his social security number and date of birth (*id.* at 76:16-25). Williamson told Plaintiff to stand where he was while Williamson investigated the warrant. (Williamson Aff. ¶ 4, Sept. 10, 2009; Ex. 1 to Williamson Aff.) Williamson also told Plaintiff that if there was no warrant, he could go about his business. (Ex. 1 to Williamson Aff.; *see also* Pl.'s Dep. 75:7-11.)

4

While Williamson was waiting for information to come back on the warrant, Plaintiff "got tired of [Williamson] talking" and told Williamson that he was wasting Plaintiff's time. (Pl.'s Dep. at 76:16-23, 77:15.) According to Plaintiff, Williamson made racist comments, calling Plaintiff "boy" and "nigger." (*Id.* at 158:9-159:8.) Here is where the stories materially diverge. According to Plaintiff, Plaintiff asked Williamson if he could sit down. Plaintiff admits that he began moving away from Williamson and squatted with his hand on the ground.[3] (*Id.* at 77:18-19, 80:15-21; *see also* Thompson Dep. 41:10-42:24, Sept. 10, 2009 (stating that Plaintiff walked away from Williamson and leaned toward ground).) Williamson believed that Plaintiff was attempting to flee. (Williamson Aff. ¶¶ 4-5; Ex. 1 to Williamson Aff.) Williamson called out over his radio that Plaintiff was "bush bound," which means Plaintiff was attempting to flee. (Pl.'s Dep. 77:20-78:4; Williamson Aff. ¶ 4; Ex. 1 to Williamson Aff.)

Williamson fired his taser at Plaintiff.[4] The taser temporarily incapacitated Plaintiff. After the taser stopped, Plaintiff tried to dislodge the taser probes, got up, and ran. (Pl.'s Dep. 81:8-11, 110:5-22.) Plaintiff fled into a thickly wooded area and continued

---

[3] According to Williamson, Plaintiff was surveying the area in a possible attempt to find an escape route, and Plaintiff was belligerent to Williamson and actually did try to take off at a full run. (Williamson Aff. ¶ 4; Ex. 1 to Williamson Aff.)

[4] Williamson contends that Plaintiff was being belligerent and attempting to flee, and he concluded that using the taser was the best way to detain Plaintiff and stop him from fleeing. (Williamson Aff. ¶ 5.)

running until his "body locked up" and he "hit the ground." Williamson chased him and caught up with him. (*Id.* at 87:10-13.) According to Plaintiff, Williamson kicked him twice in the side and deployed the taser again, then handcuffed him and began to drag him out of the wooded area. (*Id.* at 88:19-89:8.)

Other officers arrived on the scene, and Plaintiff asked to go to the hospital. The officers called an ambulance for Plaintiff, and he was transported to the hospital. Plaintiff reported chest pain. He received no substantial medical treatment at the emergency room before being transported to jail. (*See id.* at 107:23-108:4.) According to Plaintiff, his only physical injuries were several scrapes. (*Id.* at 112:19-116:7.)

Plaintiff seeks to hold Williamson liable under 42 U.S.C. § 1983 ("§ 1983") for violating Plaintiff's Fourth Amendment rights to be free from unreasonable seizures and excessive force.[5] Plaintiff also makes a state law claim for intentional infliction of emotional distress. (Compl. ¶¶ 13-18.) In his Complaint, Plaintiff alleged that Williamson's actions violated the Equal Protection Clause, but Plaintiff did not raise that claim in his response to Williamson's Motion for Summary Judgment, which clearly addressed the Equal

---

[5]Williamson argues that Plaintiff did not plead a Fourth Amendment false arrest claim. However, Count One of Plaintiff's Complaint claims that Plaintiff was arrested "illegally and without probable cause." (Compl. ¶ 9.) Though Plaintiff does not specifically invoke the Fourth Amendment (or any other law), it is difficult to imagine a clearer false arrest allegation.

6

Protection issue.  The Court therefore concludes that Plaintiff has abandoned his Equal Protection claim.  *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

The parties appear to agree that Plaintiff's claims are only against Williamson in his individual capacity, not in his official capacity as a deputy sheriff.[6]  Plaintiff did initially sue the "Harris County Sheriff's Department," but the Court previously dismissed those claims because the sheriff's department is not a legal entity subject to suit.  *Lawal v. Fowler*, 196 F. App'x 765, 768 (11th Cir. 2006).

## DISCUSSION

## I. Plaintiff's Federal Law Claims

To make a case under § 1983, Plaintiff must prove that Williamson, acting under color of state law, deprived Plaintiff of a right, privilege, or immunity secured by the Constitution or a federal law.  *See* 42 U.S.C. § 1983.  It is undisputed that Williamson

---

[6] Even if Plaintiff's claims against Williamson were construed as official capacity claims such that they are considered claims against his employer, the Harris County Sheriff, the sheriff would be entitled to Eleventh Amendment immunity.  It is well settled that Eleventh Amendment immunity bars suits brought in federal court when an "arm of the State" is sued.  *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc). A Georgia sheriff is considered an "arm of the state" in discharging his law enforcement functions, such as detaining and arresting suspects.  *See id.* at 1310, 1313; *see also Mladek v. Day*, 293 F. Supp. 2d 1297, 1304 (M.D. Ga. 2003) (concluding that county sheriff wore "state hat" at time of plaintiff's arrest and subsequent detention).

7

acted under color of state law during the events giving rise to this action.  Plaintiff contends that Williamson violated Plaintiff's Fourth Amendment rights to be free from unreasonable seizures and excessive force.

Williamson claims that he is entitled to qualified immunity as to Plaintiff's § 1983 claims. Qualified immunity shields public officers acting within the scope of their discretionary authority from liability so long as their acts do not violate clearly established law.  *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009); *accord Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation . . . protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citation and internal quotation marks omitted).

Where an official acted within the scope of his discretionary authority when he took the challenged action, the plaintiff must show that the official's conduct violated clearly established law.  *Case v. Eslinger*, 555 F.3d 1317, 1325-26 (11th Cir. 2009).  Plaintiff argues that Williamson was not within the scope of his discretionary authority when he took the challenged actions.  "A government employee has acted within his . . . discretionary authority if objective circumstances show that the challenged actions occurred in

8

the performance of the employee's duties and within the scope of this authority." *Boyce v. Andrew*, 510 F.3d 1333, 1341 (11th Cir. 2007) (per curiam) (internal quotation marks omitted). Plaintiff cannot seriously dispute that Williamson was within the scope of his discretionary authority when he stopped Plaintiff to investigate the warrant and chased Plaintiff after he fled the scene. Thus, Plaintiff must show that Williamson's conduct violated clearly established law.

In determining whether Williamson violated clearly established law, there are two key questions: (1) do the facts alleged show that Williamson's conduct violated a constitutional right? and (2) was the right clearly established at the time of Williamson's action? *See Case v. Eslinger*, 555 F.3d at 1326. The Court has discretion to decide upon the order in which to answer these questions. *Pearson*, 129 S. Ct. at 821.

Plaintiff contends that Williamson's conduct violated his Fourth Amendment rights in three ways. First, he argues that Williamson did not have reasonable suspicion to detain Plaintiff. Second, he asserts that Williamson arrested Plaintiff without probable cause. Finally, he contends that Williamson used excessive force when he arrested Plaintiff. The Court addresses each of these arguments in turn.

9

### A.   Was the Initial Stop Valid?

Plaintiff contends that Williamson did not have authority to detain him.  In general, the Fourth Amendment prohibits law enforcement officials from making searches or seizures without probable cause.  *See United States v. Dunn*, 345 F.3d 1285, 1288 (11th Cir. 2003). The exception to this rule is that a law enforcement officer may, consistent with the Fourth Amendment, "detain a person briefly for an investigatory stop if [the officer has] a reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity." *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000); *accord United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007).  "The 'reasonable suspicion' must be more than an 'inchoate and unparticularized suspicion or hunch.'" *Powell*, 222 F.3d at 917 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).  Rather, the officer "must have some minimal level of objective justification taken from the totality of the circumstances."  *Id.* (internal quotation marks omitted).

Because Williamson asserts a qualified immunity defense, "the issue is not whether reasonable suspicion existed in fact, but whether [Williamson] had 'arguable' reasonable suspicion to support an investigatory stop." *Jackson v. Sauls*, 206 F.3d 1156, 1166 (11th Cir. 2000).   "A law enforcement official who reasonably but mistakenly concludes that reasonable suspicion is present is still

10

entitled to qualified immunity." *Id.* at 1165-66. Arguable reasonable suspicion would exist in this case if a reasonable officer in the same circumstances and possessing the same information as Williamson could have believed that reasonable suspicion existed to stop Plaintiff. *See Lee*, 284 F.3d at 1195 (defining arguable probable cause).

The undisputed facts in this case show that there was an outstanding warrant for Plaintiff's arrest within one month preceding the incident in question. Plaintiff points to no evidence that Williamson knew or had reason to know whether the warrant had been cancelled. Although Plaintiff told Williamson that he had taken care of the warrant, Williamson reasonably determined that he should verify that the warrant had been cancelled. Accordingly, the Court concludes that Williamson had at least arguable reasonable suspicion to detain Plaintiff while he investigated the warrant. Plaintiff argues that Williamson could have completed the warrant investigation while Plaintiff was in the convenience store—thus obviating the need to stop Plaintiff. However, Plaintiff points to no evidence that Williamson had all of the information he needed to investigate the warrant before Plaintiff provided Williamson with his social security number and date of birth, and Plaintiff points to no evidence of how long a warrant investigation ordinarily takes in Harris County. Thus, there is no evidence that Williamson was not reasonable or diligent in researching the status of the warrant. For these

11

reasons, the Court concludes that Williamson is entitled to qualified immunity as to Plaintiff's claims arising from the initial detention.

B.  <u>Did Williamson Have Probable Cause to Arrest Plaintiff?</u>

Even if the initial stop was constitutional, Plaintiff contends that Williamson violated his Fourth Amendment rights by arresting him without probable cause. Probable cause to arrest exists "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Draper v. Reynolds*, 369 F.3d 1270, 1276 (11th Cir. 2004) (internal quotation marks omitted). Again, because Williamson asserts a qualified immunity defense, the proper inquiry is whether Williamson had *arguable* probable cause to arrest Plaintiff. *Lee*, 284 F.3d at 1195. "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as [Williamson] could have believed that probable cause existed to arrest." *Id.* (internal quotation marks omitted). "This standard recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who *unreasonably* conclude that probable cause exists." *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007).

Williamson asserts that he had at least arguable probable cause to arrest Plaintiff for obstruction under Georgia law. Whether

12

Williamson possessed probable cause or arguable probable cause to arrest Plaintiff for obstruction "naturally depends on the elements of the alleged crime[.]" *Id.* Under O.C.G.A. § 16-10-24(a), it is unlawful to "knowingly and willfully obstruct[] or hinder[] any law enforcement officer in the lawful discharge of his official duties . . . ." In this case, the undisputed facts show that Williamson was investigating whether Plaintiff had an outstanding warrant. Plaintiff argued with Williamson and told Williamson that he was wasting his time and harassing him. More importantly, although Williamson told Plaintiff to stay put while he investigated the warrant, it is undisputed that Plaintiff took a few steps and started to move away from Williamson. Furthermore, after Williamson shocked Plaintiff with the taser the first time, Plaintiff got up and started running away. From this, a reasonable officer in Williamson's shoes could conclude that Plaintiff was hindering Williamson's warrant investigation and was attempting to flee the scene. Accordingly, the Court concludes that Williamson had arguable probable cause to arrest Plaintiff for obstruction. Williamson is therefore entitled to qualified immunity as to Plaintiff's claims that the arrest was without probable cause.

    C.   <u>Did Williamson Use Excessive Force?</u>

Plaintiff contends that Williamson used excessive force when he discharged the taser gun at Plaintiff. Plaintiff argues that Williamson shot him with the taser for no reason and that Williamson

13

did not have probable cause to arrest him for anything.  However, as discussed above, Williamson had arguable probable cause to arrest Plaintiff for obstruction.  The question is whether Williamson used excessive force in effectuating Plaintiff's arrest.

"It is well settled that the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  *Draper*, 369 F.3d at 1278 (internal quotation marks omitted).  However, the "Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest."  *Id.* at 1277 (internal quotation marks omitted).  To determine whether the manner of arrest was reasonable, the Court must look to the "totality of circumstances," including "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted."  *Id.* at 1277-78.  The Court must "measure the quantum of force employed against these factors-the severity of the crime at issue; whether the suspect poses an immediate threat to the safety of the officers or others; and whether the suspect actively resisted arrest or attempted to evade arrest by flight."  *Oliver v. Fiorino*, 586 F.3d 898, 905-07 (11th Cir. 2009) (noting that initial taser shock of mentally unstable suspect was probably justified but finding that eight to twelve taser shocks over two-minute span and after Plaintiff was totally immobilized were not objectively reasonable).  The

14

"calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Draper*, 369 F.3d at 1278 (internal quotation marks omitted). Therefore, the Court must consider Williamson's actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Oliver*, 586 F.3d at 905 (internal quotation marks omitted).

In *Draper*, the Eleventh Circuit found that a one-time taser shock that did not inflict any serious injury was reasonably proportionate to the need for force during a traffic stop because the suspect was uncooperative and argumentative, and he refused to comply with the officer's verbal commands. *Draper*, 369 F.3d at 1278; *cf. Vinyard v. Wilson*, 311 F.3d 1340, (11th Cir. 2002) (noting that use of pepper spray is reasonable where arrestee refuses police requests but is excessive where arrestee surrenders and is secured); *cf. also Mann v. Taser Int'l*, ____ F.3d ____, No. 08-16951, 2009 WL 4279713, at *9 (finding that use of taser was justified where arrestee was actively resisting arrest and officer discharged taser after arrestee refused to comply with his orders). Here, the undisputed facts show that Plaintiff was arguing with Williamson about the warrant investigation. The facts also show that although Williamson told Plaintiff to stay put, Plaintiff took a few steps and began moving

15

away from Williamson. From this, a reasonable officer under the circumstances could have concluded that Plaintiff was a flight risk and that some force was necessary to stop Plaintiff from fleeing. This conclusion is bolstered by the undisputed fact that after Williamson shot Plaintiff with the taser once, Plaintiff got up and started running; a reasonable officer could conclude that additional force was needed to stop Plaintiff. Williamson did use additional force—kicking Plaintiff twice and shooting Plaintiff with the taser one more time—before he was able to handcuff Plaintiff. This additional force did not cause any serious injury to Plaintiff. Under the totality of the circumstances, a reasonable officer in Williamson's position could conclude that the amount of force Williamson used to effectuate Plaintiff's arrest—two shocks from a taser gun (the second after the first taser shock proved ineffective) and two kicks, none of which caused any serious injury—was not excessive force. For these reasons, Williamson is entitled to qualified immunity on Plaintiff's excessive force claim. Because Williamson is entitled to qualified immunity on all of Plaintiff's federal claims, the Court grants summary judgment in his favor as to those claims.

## II.  Plaintiff's State Law Claims

In addition to his § 1983 claims, Plaintiff also seeks to hold Williamson liable under Georgia law for intentional infliction of emotional distress. Williamson contends that he is entitled to

official immunity.[7]  A suit against a governmental employee sued in his individual capacity "is barred by official immunity where the public official has engaged in discretionary acts that are within the scope of his or her authority, and the official has not acted in a wilful or wanton manner; with actual malice; or with the actual intent to cause injury." *Brown v. Penland Constr. Co.*, 281 Ga. 625, 625-26, 641 S.E.2d 522, 523 (2007) (citing *Gilbert v. Richardson*, 264 Ga. 744, 752, 452 S.E.2d 476, 482-83 (1994); *see also* Ga. Const. art. I, § II, ¶ IX(d)).  Plaintiff cannot seriously dispute that Williamson was engaging in a discretionary act when he detained, arrested, and used force on Plaintiff.

Plaintiff argues that Williamson acted with actual malice when he arrested Plaintiff.  "Actual malice" means "a deliberate intention to do wrong, and does not include . . . the reckless disregard for the rights or safety of others." *Murphy v. Bajjani*, 282 Ga. 197, 203, 647 S.E.2d 54, 60 (2007) (internal quotation marks omitted).  A "deliberate intention to do wrong" is "the intent to cause the harm suffered by the plaintiffs." *Id.*  Plaintiff points to no evidence that Williamson acted with the requisite intent to cause Plaintiff harm.  Plaintiff argues that Williamson "knew" that Plaintiff had not committed a crime and arrested him anyway, but, as discussed above,

---

[7]Plaintiff's Complaint is not a model of clarity, and it is not clear to the Court whether Plaintiff alleges additional causes of action under Georgia law.  Even if Plaintiff makes other tort claims under Georgia law, the official immunity analysis would apply equally to other claims.

17

the undisputed evidence shows that Williamson had arguable reasonable suspicion to detain Plaintiff to investigate the warrant and that Williamson had arguable probable cause to arrest Plaintiff for obstruction.  There is simply no evidence that Williamson knew Plaintiff had not committed a crime and arrested him anyway.  Accordingly, the Court finds that Williamson is entitled to official immunity, and summary judgment is therefore granted as to Plaintiff's state law claims against him.

## CONCLUSION

For the reasons set forth above, the Court grants Williamson's Motion for Summary Judgment (Doc. 32) as to all of Plaintiff's claims.


IT IS SO ORDERED, this 29th day of December, 2009.


                                                S/Clay D. Land
                                                  CLAY D. LAND
                                   UNITED STATES DISTRICT JUDGE